**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GARY E. DOUGHTEN,

        Petitioner,

v.                                Case No. 3:12-cv-288-J-32JRK

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS, et al.,

        Respondents.

_____

## <u>ORDER</u>

### I.   <u>Status</u>

      Petitioner, Gary E. Doughten, an inmate of the Florida penal system, initiated this case by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. <u>See</u> Doc. 1 (Petition). Petitioner challenges a state court (Clay County, Florida) judgment of conviction for sexual battery of a person less than twelve years of age (count one); lewd or lascivious battery of a person twelve years of age or older, but less than sixteen years of age (count two); lewd or lascivious molestation of a person less than twelve years of age (count three); and lewd or lascivious molestation of a person twelve years of age or older, but less than sixteen years of age (count four). Doc. 1 at 1. Respondents filed a Response on December 16, 2014. <u>See</u> Doc. 23 (Resp.).[1] Petitioner declined to file a reply to the Response. <u>See</u> Doc.

_____

      [1] Attached to the Response are several exhibits. The Court cites to the exhibits as "Resp. Ex."

28. On March 1, 2018, Petitioner filed a Supplement to his Petition raising two additional claims. See Doc. 38 (Supplemental Petition). Respondents filed a motion to dismiss Petitioner's Supplemental Petition[2] (Doc. 40; Supp. Resp.), and Petitioner filed a reply (Doc. 44). This case is ripe for review.

## II. __Governing Legal Principals__

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that does

---

[2] Attached to the Supplemental Response are several exhibits. The Court cites to the exhibits as "Supp. Resp. Ex."

2

> provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of

clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438

> (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> federal review of a defaulted claim by showing cause for the
> default and prejudice from a violation of federal law. See
> Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused

under certain circumstances. Notwithstanding that a claim has been procedurally

defaulted, a federal court may still consider the claim if a state habeas petitioner can

show either (1) cause for and actual prejudice from the default; or (2) a fundamental

miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for

a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective
> factor external to the defense that prevented [him] from
> raising the claim and which cannot be fairly attributable to
> his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258
> (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct.
> 2639).[5] Under the prejudice prong, [a petitioner] must
> show that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier, 477
> U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive

consideration on the merits of a procedurally defaulted claim if the petitioner can

establish that a fundamental miscarriage of justice, the continued incarceration of one

who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive consideration
> on the merits of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional violation has

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

> probably resulted in the conviction of one who is actually
> innocent, a federal habeas court may grant the writ even in
> the absence of a showing of cause for the procedural
> default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just legal innocence.
> Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that

7

the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on

8

counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.    Analysis

### A. The Petition

### *Ground One*

Petitioner alleges that the trial court erred when it allowed, over trial counsel's objection, the victim to testify regarding Petitioner's release from jail on an unrelated crime. Doc. 1 at 6. Specifically, Petitioner challenges the trial court's evidentiary ruling that allowed the victim to testify that he came forward with accusations of sexual abuse only after he learned that Petitioner was being released from jail on an "unrelated incident." Id. According to Petitioner, this reference to Petitioner's incarceration for an unrelated crime was unduly prejudicial. Id. at 7.

Petitioner, with the help of appellate counsel, raised this issue as his sole claim on direct appeal. Resp. Ex. F. The state filed an answer brief arguing that the trial court did not abuse its discretion in allowing this testimony. Resp. Ex. G. Finding no merit in Petitioner's claim, the First District Court of Appeals per curiam affirmed Petitioner's judgment and convictions without a written opinion. Resp. Ex. I.

Initially, to the extent Petitioner urges that the state court erred under Florida law when it allowed the state to present this evidence, this assertion is not cognizable on federal habeas review. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence,"

because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections). Thus, Petitioner's allegations that the trial court violated state law are not proper for the Court's consideration.

To the extent that Petitioner's claim can be liberally construed as a cognizable federal habeas claim, a review of the state's answer brief on direct appeal (Resp. Ex. G) implies that the appellate court affirmed Petitioner's convictions and sentences on the merits. If the appellate court addressed the merits, Petitioner is not entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, assuming arguendo that the state court's adjudication is not entitled to deference, it is still without merit because the state court's evidentiary ruling did not "'so infuse[] the trial with unfairness as to deny due process of law.'" Smith v. Jarriel, 429 F. App'x 936, 937 (11th Cir. 2011) (quoting Felker v. Turpin, 83

10

F.3d 1303, 1311-12 (11th Cir. 1996)). The following record evidence is of import here. It is uncontested that in August 2003, Petitioner was arrested in Georgia and taken into custody pursuant to a Florida arrest warrant regarding a case in which Petitioner was alleged to have sexually abused his son.[6] Resp. Ex. B at 146-48. When the arrest warrant was executed, the police found Petitioner in the same bed as the victim. Id. At the time of the 2003 arrest, the police questioned the victim; however, at that time, the victim denied that Petitioner sexually abused him. Id. at 149. The victim did not disclose the abuse until October 2005, when he heard that Petitioner was going to be released from jail following the resolution of his 2003 arrest. Id. at 149.

Before trial, Petitioner requested that the victim be precluded from testifying that Petitioner's release from jail prompted the victim to come forward, and instead requested that the victim simply say that he came forward because he thought Petitioner was going to move into the house next door to the victim. Id. at 149-55. The state disagreed with Petitioner's request. Id. at 151. Specifically, the state explained,

> [T]he crux of the defense in this case . . . is attacking the victim, saying he's making it up because he's being pressured by people who don't want the defendant to come back in the neighborhood and given that, not allowing the state to say the truth of the matter, which is that the defendant was being released from jail and the victim was fearful and only saying that the defendant was moving back into the neighborhood kind of plays into that defense without giving the state an opportunity to go the other way.

---

[6] Petitioner's son testified as a Williams rule witness during Petitioner's trial. Resp. Ex. B at 146. The Williams rule witnesses are discussed in Ground Three below.

11

Resp. Ex. B at 153-54. Petitioner acknowledged that his defense strategy was to attack the victim's credibility. Id. at 154. Considering this explanation, the trial court ruled that testimony regarding the victim's motivation to report the abuse, i.e., Petitioner's release from jail, was relevant and admissible. Id. at 154-55.

During trial, the victim testified that in early 2001, when the victim was ten years old, Petitioner moved in to the house next door. Resp. Ex. C at 250-53. The victim stated that Petitioner became a "grand-father figure" to him, and he would often spend the night with Petitioner and travel with Petitioner. Id. According to the victim, about six months after Petitioner moved next door, the victim woke up one night to find Petitioner laying on top of him and touching his genitals. Id. at 257-58. The victim testified that over the next few years, this abuse progressed to oral sex and anal sex. Id. at 259. When the victim tried to tell Petitioner to stop, Petitioner would threaten to hurt the victim's family or would threaten to tell the victim's friends that the victim was homosexual. Id. at 265.

The victim testified that when the police arrested Petitioner in Georgia in August 2003, he initially did not tell police that Petitioner abused him. Id. at 264. According to the victim, he kept the abuse a secret because he was embarrassed and believed that Petitioner's arrest and incarceration meant that the abuse was "finally over." Id. The victim explained that once he learned that Petitioner was getting out of jail, he became scared that Petitioner would move back to the neighborhood and begin abusing him again. Id. at 266-67. The victim testified that Petitioner's release from jail prompted him to come forward. Id. On cross examination, trial counsel attacked

the victim's credibility by eliciting testimony that prior to the victim's 2005 report of sexual abuse, numerous people asked the victim if Petitioner ever sexually abused him, and the victim maintained for years that he was no sexually abused. Id. at 280-86. Considering the record as a whole and because Petitioner made the victim's credibility a primary issue at trial, the Court finds that the victim's testimony regarding Petitioner's release from jail was relevant to explain why the victim waited so long to report the abuse and was not unduly prejudicial. This Ground is denied.

### Ground Two

Ground Two is divided into ten sub-claims. The Court address each claim in turn below.

#### i.    Claim One

Petitioner alleges that trial counsel was ineffective for failing to pursue a motion for a statement of particulars to narrow the time frames of the alleged offenses, and thus, allow Petitioner to present a viable defense to the charges. Doc. 1 at 8-9.

Petitioner raised this claim in his motion for postconviction relief filed in state court pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. K at 8. The trial court summarily denied the claim, finding in pertinent part:

> Without even reaching the issue of whether trial counsel was deficient, the court finds Defendant cannot demonstrate any prejudice as a result thereof. A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Strickland, supra at 697; Hollady v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance

prong if the defendant cannot meet the prejudice prong.")
Even if a statement of particulars had been requested by
trial counsel, Defendant cannot demonstrate a reasonable
probability that this Court would have found the State
failed to meet its obligation of providing a specific enough
time period within the Information. The Florida Supreme
Court has recognized that child sexual abuse cases pose
unique problems for prosecution. See Dell'Orfano v. State,
616 So. 2d 33, 35 (Fla. 1993). As a result, the prosecutor is
granted discretion in the charging pattern in child sexual
abuse cases and may charge a defendant in a manner not
permitted in other types of criminal cases, including
expanding the time periods for the commission of offenses
and grouping types of offenses together. In State v.
Generazio, 691 So. 2d 609 (Fla. 4th DCA 1997), the Fourth
DCA held that the prosecutor did not abuse his discretion in
charging one count for each type of sexual act, where the
victim had been continually abused over an eight-month
period and could not remember specific dates or narrow the
time period.

In the instant case, there was sufficient evidence
from the child victim that he was subjected to ongoing
sexual abuse over a two year period. The child victim could
not remember specific times or dates of the acts, but
testified that the abuse started six months after Defendant
moved in next door (when the victim was under the age of
twelve) and continued until Defendant moved out (when the
victim was over the age of twelve). Based on the facts of the
case, including the victim's age and the extent of the alleged
abuse, there is not a reasonable probability that this Court
would have required the State to narrow the time frame in
the Information. See, e.g., Whittingham v. State, 974 So. 2d
616 (Fla. 4th DCA 2008) (holding that the State's
submission to the jury of several counts which included
multiple, distinct acts of sexual abuse against a child did not
constitute fundamental error and recognizing that, in a
sexual abuse case, the State may charge a defendant in a
manner not permitted in other types of criminal cases,
including the expansion of time periods of the offenses and
the grouping together of types of offenses). As a result, the
Court finds Defendant cannot demonstrate any prejudice

resulted from counsel's alleged deficiency. Accordingly, Defendant's first ground for relief is denied.

Resp. Ex. K at 83-85 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Even assuming that the state court's adjudication is not entitled to deference, this claim is still without merit. There is no indication that a statement of particulars would have made a difference in the preparation of Petitioner's defense or affected the trial's outcome. Indeed, the victim's trial testimony was not any more specific as to the dates of the sexual abuse. The victim testified that Petitioner sexually abused him on more than one occasion between February 24, 2001, and February of 2003. Resp. Ex. C at 261. Petitioner could not remember the specific dates that the abuse occurred, but he testified that it occurred both before he turned twelve years of age and after he

---

[7] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

turned twelve years of age. Id. Considering this evidence, the Court finds that Petitioner has failed to demonstrate prejudice from trial counsel's alleged failure and is not entitled to relief on this claim.

### ii.    Claim Two

Petitioner argues that trial counsel was ineffective for failing to object to the victim's trial testimony regarding uncharged acts that Petitioner allegedly committed against the victim. Doc. 1 at 10. Petitioner asserts that the state only charged him with four specific offenses and declined to charge them as an "ongoing act." Id. Thus, according to Petitioner, the victim's testimony concerning acts that were not the four specifically charged offenses constituted impermissible collateral act evidence, and the state failed to file a notice of intent to present such evidence. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 12. The trial court denied the claim, finding in pertinent part:

> Having reviewed the record, the Court finds Defendant's claim is without merit. As a practical matter, the Court finds it unlikely that Defendant, or any reasonable person, would believe that the State was alleging Defendant committed one sex act for each of the four counts in the Information. Rather, each count encompasses multiple acts over a certain period of time charged as one representative offense. In State v. Dell'Orango, 651 So. 2d 1213 (Fla. 4th DCA 1995), the Fourth DCA noted that the courts of our sister states have recognized that child molestation is, by its very nature, a continuous course of criminality rather than a series of successive crimes. Therefore, they have allowed the matter of how to charge these sensitive and difficult-to-define acts of sexual abuse to rest in the discretion of the prosecutors.

16

In the instant case, the evidence presented at trial showed that the victim could identify several different types of sexual abuse that continuously occurred over a two year period, during which time the child turned twelve years of age. The victim testified as to when the acts first began and when they stopped. In addition, the victim testified that the acts occurred both before and after his twelfth birthday. As a result, Defendant was charged with one count for each type of ongoing offense of sexual abuse that occurred before the minor victim turned twelve years of age, and one count for each type of sexual abuse that occurred after the victim turned twelve years of age. See [ ] Generazio, 691 So 2d [at 611] (noting that in cases involving ongoing child abuse, where the victim is too young at the time of the alleged abuse to testify to the specific dates the abusive acts occurred, it is not improper for the information to allege that the abuse occurred on one or more occasions within a specific time period). The Court finds the Information properly charged Defendant under Florida law. Consequently, any testimony or statements concerning the various acts committed on the child victim within these time-frames was not improper collateral act evidence. "[C]ounsel is not ineffective for failing to make a futile objection." Willacy v. State, 967 So. 2d 131, 140 (Fla. 2007) (citing Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986)). Having failed to establish the first prong under Strickland, Defendant's second ground for relief is denied.

Resp. Ex. K at 85-86 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the

---

[8] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Further, even if the state court's adjudication is not entitled to deference, the Court finds that this claim is still without merit. "[E]vidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not <u>Williams</u>[9] rule [or collateral crime] evidence. <u>See</u> <u>Griffin v. State</u>, 639 So. 2d 966, 968 (Fla. 1994). "Evidence is inextricably intertwined if the evidence is necessary to (1) 'adequately describe the deed'; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s)." <u>Dorsett v. State</u>, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006). (citation omitted). Here, Petitioner challenges the victim's ability to testify that Petitioner sexually abused him ten to twenty times between February 2001 and February 2003, when the state only charged Petitioner with four offenses. However, all of the illegal acts to which the victim testified were inextricably intertwined with the charged offenses and were necessary to adequately describe how Petitioner's abuse of the victim progressed and the manner in which Petitioner fostered a relationship

---

[9] <u>Williams v. State</u>, 110 So. 2d 654, 662 (Fla. 1959).

with the victim. As such, trial counsel was not deficient for failing to challenge this testimony. This claim is denied.

### iii. *Claim Three*

Petitioner alleges that trial counsel was ineffective for failing to request jury instructions on the crime of criminal attempt for counts one and two. Doc. 1 at 11. Petitioner asserts that failure to include instructions on attempt prevented the jury from exercising its inherent pardon power. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 25-7. The trial court denied the claim, finding that

> "[U]nder Strickland, a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon, which by definition assumes that the jury would have disregarded the law, the trial court's instructions, and the evidence presented." Sanders v. State, 946 So. 2d 953, 956 (Fla. 2006). "Therefore, a claim alleging ineffective assistance of counsel for failure to request an instruction on a lesser-included offense may be summarily denied." Id. at 960. Accordingly, Defendant's sixth claim for relief is denied.

Resp. Ex. K at 90. The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and

---

[10] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even assuming that the state court's adjudication is not entitled to deference, Petitioner is still not entitled to the relief he seeks. Florida Rule of Criminal Procedure 3.510 provides in relevant part: "The judge shall not instruct the jury [on attempt] if there is no evidence to support the attempt and the only evidence proves a completed offense. . . ." In <u>Wilson v. State</u>, 635 So. 2d 16 (Fla.1994), the Florida Supreme Court ruled that when the victim testifies to the completed offense of capital sexual battery and the defendant denies the charge, he is not entitled to an attempt instruction pursuant to Rule 3.510. Here, the victim testified that Petitioner committed the completed offenses, in that oral penetration occurred. Resp. Ex. C at 258-60; <u>see, e.g.</u>, <u>Roughton v. State</u>, 185 So. 3d 1207, 1210 (Fla. 2016) ("Establishing capital sexual battery . . . requires proof of either penetration or oral, anal, or vaginal union with the sexual organ of another"). Petitioner was not entitled to jury instructions on attempt under state law because the evidence showed the completed offenses. Thus, there can be no prejudice as a matter of law from counsel's failure to request an instruction that Petitioner was not entitled to have. This claim is denied.

*iv.    Claim Four*

Petitioner contends that the trial court committed fundamental error by instructing the jury that it could find Petitioner guilty of count one and count two if the jury found that Petitioner committed "anal union," "anal penetration," or "oral penetration." Doc. 1 at 12. According to Petitioner, there was no evidence of "anal penetration," thus, any instruction regarding such conduct "compromised the jury's ability to render a unanimous verdict," and "shifted the burden of proof for reasons other than what the state had proven beyond a reasonable doubt." Id.

Respondents assert that this claim is unexhausted because Petitioner failed to present it to the state court during his direct appeal. Resp. at 14. The Court agrees. Upon review of the record, the Court finds that Petitioner failed to present this claim in state court. As such, this claim is unexhausted and procedurally defaulted. Petitioner has failed to show either cause and prejudice from the default, or that a fundamental miscarriage of justice will result if the claim is not addressed on the merits. Therefore, he is not entitled to federal review of this claim.

*v.    Claim Five*

Petitioner alleges that trial counsel was ineffective for failing to object to the state's Brady[11] violation. Doc. 1 at 12-13. According to Petitioner, the state withheld evidence that a doctor conducted a physical examination of the victim. Id. Petitioner contends that he learned of the evidence during the victim's trial testimony and avers

---

[11] Brady v. Maryland, 373 U.S. 83 (1963).

that counsel should have objected and requested a hearing to obtain this exculpatory evidence. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 27-30. The trial court denied the allegation, finding in relevant part:

> As an initial matter, Defendant acknowledges that the forensic interviewer, Mrs. Palmer, testified that contrary to the minor victim's statements, she had not referred the child victim to a doctor. As a result, the Court does not find that Defendant has established that any testimony was suppressed by the State. Furthermore, the mere possibility that undisclosed items or information may have been helpful to the defense in its own investigation does not establish the materiality of the information. Wright [v. State], 857 So. 2d [861, 870 (Fla. 2003)].
>
> . . .
>
> Defendant acknowledges in his Motion that "physical examinations do not always reveal conclusive signs of sexual abuse, and that a lack of conclusive physical evidence does not necessarily mean that no abuse happened." Therefore, the Court finds there is not a reasonable probability that, but for counsel's alleged deficiency, the result of the proceeding would have been different.

Resp. Ex. K at 90-91 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[12] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and

---

[12] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Even assuming arguendo that the state court's adjudication is not entitled to deference, the claim is still without merit. The victim testified that because he was found in bed with Petitioner when Petitioner was arrested in Georgia on an unrelated allegation of sexual abuse, he met with Child Protection Team member Aislinn Palmer in 2003. Resp. Ex. C at 281. He explained that during this 2003 interview, he told Ms. Palmer that Petitioner did not sexually abuse him. Id. He also testified that Ms. Palmer referred him to a doctor and a doctor conducted a physical exam. Id. at 282. The victim testified that during the exam, he also told the doctor that he was not abused. Id. Considering this testimony, the Court finds that even if the victim had seen a doctor, any information about the exam would not be exculpatory because the victim admitted that he withheld information about Petitioner's abuse from the doctor. Therefore, this claim is denied.

   vi.    *Claim Six*

Petitioner argues that trial counsel was ineffective for failing to request a separate hearing on Petitioner's motion to dismiss based on the state's discovery violation. Doc. 1 at 13-14.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 46-51. The

trial court denied the claim, finding in pertinent part:

> Defendant assert[s] that the state failed to produce a videotaped interview of the minor victim taken four years earlier during an unrelated investigation of allegations of abuse committed by Defendant. Defendant appears to assert that counsel rendered ineffective performance by failing to request a <u>Richardson</u>[13] inquiry after this Court denied Defendant's [motion to dismiss based on the state's discovery violation].

> . . .

> In the instant case, counsel was not ineffective for failing to specifically request a <u>Richardson</u> hearing. As Defendant acknowledges in his Motion, defense counsel filed a Motion to Dismiss arguing that the State had committed a discovery violation that resulted in prejudice to the Defendant. At a hearing on April 4, 2007, this Court considered Defendant's claims and determined that Defendant suffered no prejudice due to the fact that the interviewer, Aislinn Palmer, would testify at trial as to the minor victim's inconsistent statements given four years earlier. In light of the Court's denial of the Defendant's Motion to Dismiss, Defendant has failed to establish that had counsel requested a separate <u>Richardson</u> hearing, the Court would have found that a discovery violation occurred that resulted in prejudice to Defendant. Accordingly, Defendant has failed to establish the second prong under <u>Strickland</u> and this twelfth ground for relief is denied.

Resp. Ex. K at 94-95 (record citations omitted). The First DCA per curiam affirmed

the trial court's denial without issuing a written opinion. Resp. Ex. M.

---

[13] <u>Richardson v. State</u>, 246 So. 2d 771 (Fla. 1971).

To the extent that the First DCA affirmed the trial court's denial on the merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. After Petitioner's arrest in 2003, the victim met with Ms. Palmer and the conversation was videotaped. Resp. Ex. L at 226-27. In the interview, the victim denied that Petitioner abused him. Id. Before the victim came forward about Petitioner's abuse, the subject tape was destroyed. Id. However, through Ms. Palmer's trial testimony, the content of the videotape and the victim's initial denial of abuse were presented to the jury. Resp. Ex. C at 372-84. As such, Petitioner cannot demonstrate prejudice. This claim is denied.

   *vii.*    *Claim Seven*

Petitioner asserts that trial counsel was ineffective for failing to sufficiently impeach the victim with all his prior inconsistent statements. Doc. 1 at 14-15.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 42-6. The trial court denied the claim, finding in relevant part:

---

[14] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

In his eleventh claim for relief, Defendant alleges counsel rendered ineffective assistance by failing to adequately impeach the child victim's alleged inconsistent and conflicting testimony. Defendant specifies several alleged inconsistencies and claims that, but for counsel's deficient performance, the outcome of the trial would have been different. As an initial matter, Defendant acknowledges that counsel did make a "half-attempt to impeach" the child victim's testimony, but argues he only established some of the inconsistent statements. On a claim of ineffective assistance of counsel, the standard is "reasonably effective, not perfect or error-free counsel." Coleman v. State, 718 So. 2d 827, 829 (Fla. 4th DCA 1998) (citing Jennings v. State, 583 So. 2d 316, 321 (Fla. 1991) and Waterhouse v. State, 522 So. 2d 341 (Fla. 1988)). In evaluating whether counsel's performance falls outside the range of reasonably professional assistance, courts are required to "(a) make every effort to eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time, and (b) indulge a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment with the burden on the claimant to show otherwise." Id. at 829-830. Having reviewed the trial transcript, the Court concludes that counsel's performance in questioning the child victim was within the range of reasonable professional assistance. Accordingly, Defendant's eleventh ground for relief is denied.

Resp. Ex. K at 93-94 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[15] the Court will address the claim in accordance with the deferential standard

---

[15] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even assuming that the state court's adjudication is not entitled deference, this claim is still without merit. In his Rule 3.850 motion, Petitioner references the points that he claims trial counsel failed to highlight when impeaching the victim. Resp. Ex. K at 42-46. Specifically, Petitioner asserted that trial counsel should have elicited the contrast between the victim's deposition testimony and trial testimony regarding the number of times Petitioner sexually abused the victim. Id. However, a review of the trial transcript shows that trial counsel did elicit the victim's prior inconsistent statements, and thoroughly attempted to impeach him with such. Resp. Ex. C at 299-307. Therefore, the Court finds that counsel was not deficient. This claim is denied.

*viii.   Claim Eight*

Petitioner maintains that trial counsel was ineffective for failing to object to the state's improper bolstering of the victim's credibility during its closing arguments. Doc. 1 at 16.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 88-89. In summarily denying this issue, the trial court found the following:

27

Defendant alleges the prosecutor improperly bolstered the credibility of the child victim by making the following comments: "[the child victim] alone, as powerful and credible as his testimony is, is enough to convict;" and (2) "As powerful as this young man's testimony was, as much as it rang and rang of veracity and truthfulness . . . ." Having reviewed the trial transcript, the Court finds that the prosecutor's comments were a valid response to the defense's argument to the jury that changes in the child victim's story suggested it was fabricated. At trial, defense counsel questioned the child victim about his deposition and prior statement to law enforcement, in an attempt to impeach the child's version of events by pointing out inconsistencies. Therefore, when read in context, the prosecutor's comments were an attack on the defense theory that the child victim was being untruthful and fabricated the story.

Resp. Ex. K at 88-89 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[16] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

---

[16] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

The court in <u>Dailey v. Sec'y Fla. Dept. of Corr.</u>, No. 8:07-CV-1897-T-27MAP, 2012 WL 1069224, at *6 (M.D. Fla. Mar. 29, 2012) imparted that,

> Under Florida law, trial counsel is permitted wide latitude in arguing to a jury. <u>Breedlove v. State</u>, 413 So.2d 1 (Fla. 1982). Federal law likewise permits wide latitude in this regard. To prevail under federal law, a petitioner must show that the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986). <u>See also</u> <u>Cargill v. Turpin</u>, 120 F.3d 1366 (11th Cir. 1997) (improper remarks will compel habeas corpus relief only if they are so egregious as to render the proceedings fundamentally unfair). Upon consideration, it can be reasonably concluded that none of the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. <u>See</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642 (1974); <u>Cargill v. Turpin</u>, 120 F.3d 1366, 1379 (11th Cir. 1997) (if reviewing court is confident that, absent improper prosecutorial remarks, the jury's decision would have been no different, proceeding cannot be said to have been fundamentally unfair, and habeas relief is not warranted).

Upon review of the state court record, this Court finds the prosecutor's comments regarding the victim's credibility, in context, were merely a recitation of and response to the Petitioner's defense at trial. Resp. Ex. D at 449-50, 452-53. Further, any harmful effect from any allegedly improper statement was diminished by the trial court's instruction to the jury that the attorneys' statements during closing arguments are not evidence, and thus, should not be considered as such. Resp. Ex. D at 433. Therefore, counsel was not deficient for failing to object because the prosecutor's comments did not deprive Petitioner due process.

*ix. Claim Nine*

Petitioner alleges that trial counsel was ineffective for failing to request a new trial or judgment of acquittal after the jury, during deliberations, asked the trial court for the victim's date of birth. Doc. 1 at 17. According to Petitioner, the trial court refused answer the jury's question; thus, the evidence the jury considered was insufficient to support the verdicts. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 65-70. In summarily denying the claim, the trial court explained the following:

> As an initial matter, to the extent Defendant is attempting to challenge the sufficiency of the evidence against him, Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. Betts v. State, 792 So. 2d 589 (Fla. 1st DCA 2001); Jackson v. State, 640 So. 2d 1173 (Fla. 2d DCA 1994). Moreover, defense counsel did argue a Motion for Judgment of Acquittal at the conclusion of the State's case, which defense counsel renewed at the conclusion of the defense's case. In addition, defense counsel filed a Motion for New Trial that was argued at Defendant's sentencing hearing on May 2, 2007. Having no factual basis for his claim, Defendant's thirteenth ground for relief is denied.

Resp. Ex. K at 95 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[17] the Court will address the claim in accordance with the deferential standard

---

[17] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even assuming that the state court's adjudication is not entitled to deference, this claim is still without merit. At trial, the victim testified that his birthday is February 24, 1991. Resp. Ex. C at 253. The victim explained that Petitioner moved in next door around February 24, 2001, when the victim was ten years old. Id. at 253. According to the victim, Petitioner sexually abused him from February 2001 to August 2003; thus, both before and after the victim turned twelve years old. Id. at 254-61. As such, contrary to Petitioner's allegations, the state did present evidence of the victim's date of birth and his age at the time Petitioner committed the offenses. Petitioner cannot demonstrate that counsel was deficient under Strickland or that he suffered any prejudice resulting from any alleged deficiency. This claim is denied.

x.      *Claim Ten*

Petitioner contends that trial counsel was ineffective for failing to investigate Mike Beecher as a potential defense witness. Doc. 1 at 18. According to Petitioner, Beecher was a fellow Clay County Jail inmate who had exculpatory evidence regarding Petitioner's case. Id. Petitioner states that he told his trial counsel about Beecher, but counsel failed to secure him as a witness. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 73-80. The

trial court denied the claim, finding in pertinent part:

> Defendant alleges that Mr. Beecher could have corroborated Defendant's allegations that the State witness, Patricia Baltzley, had a motive to pressure the minor victim into fabricating allegations of sexual abuse. Defendant further asserts that his counsel met with Mr. Beecher in regards to his allegedly exculpatory testimony. After this meeting, Defendant states that counsel informed him that Mr. Beecher was involved in a car accident years earlier and as a result, suffers from a mental disorder.
>
> Based on this, counsel advised Defendant that based on Mr. Beecher's mental instability, it would be unwise to use Mr. Beecher as a defense witness at trial. Based on Defendant's own allegations, the Court does not find defense counsel's failure to call Mr. Beecher as a witness was outside the wide range of reasonable professional assistance. In light of the fact that Mr. Beecher was mentally unstable, counsel cannot be said to have been deficient, as he had no way of knowing whether his testimony would be beneficial or detrimental. In addition, there is a reasonable possibility that Mr. Beecher's testimony would not have been found credible by a jury. As Defendant notes in his Motion, Mr. Beecher was in jail because he just confessed to committing seventeen criminal counts. Therefore, as a practical matter it is questionable how much impact Mr. Beecher's testimony would have had in light of his criminal record, as well as his history of mental instability. As such, a jury could have found Mr. Beecher's testimony was untruthful and rather than supporting Defendant, this could have had a negative effect on the jury. Accordingly, Defendant has not demonstrated that the failure to call Mr. Beecher as a witness resulted in prejudice. Having failed to establish either prong of <u>Strickland</u>, Defendant's fourteenth ground for relief is denied.

Resp. Ex. K at 96-97 (record citations omitted). The First DCA per curiam affirmed

the trial court's denial without issuing a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits,[18] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even if the state court's adjudication is not entitled to deference, this claim is still without merit. A review of Petitioner's Rule 3.850 motion shows that Petitioner sought to have Beecher testify that Patricia Baltzley had the victim fabricate the sexual abuse, so Baltzley could continue residing in Petitioner's home. Resp. Ex. K at 74. At trial, trial counsel called Baltzley as a defense witness. Resp. Exs. C at 405-13; D at 414-20. Baltzley testified that in July 2003, she entered into a contract with Petitioner to buy his home, which was located next door to the victim. Resp. Ex. C at 406-07. Baltzley testified that while she was living there, the victim came to her house and told her that Petitioner sexually abused him. Id. at 408. She explained that she immediately called the police. Id. at 409. According to Baltzley, a year or two after the victim confided in her, Petitioner's attorney contacted her about

_____

[18] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

her rights to Petitioner's home. Id. at 410. She admitted that she told the attorney that if Petitioner were to move back into the home, serious harm would come to him. Id. at 411. Trial counsel elicited this testimony in an attempt to show that Baltzley was motivated to call the police and fabricate the sexual abuse because she had an interest in Petitioner's home. As such, any testimony from Beecher to support such a theory would be cumulative. Thus, Petitioner cannot demonstrate that but for trial counsel's alleged failure, the outcome of the trial would have been different. This claim is denied.

### Ground Three

Petitioner avers that "the trial court abused its discretion by allowing the state to introduce Williams rule, similar fact evidence during Petitioner's jury trial." Doc. 1 at 19. He claims that the trial court did not conduct a Williams rule hearing to determine if the probative value of the evidence outweighed any undue prejudice, and it did not properly apply sections 90.403, 90.404, Florida Statutes, thus, the Williams rule evidence became a feature at trial. Id.

Petitioner challenges the admissibility of the state's three Williams rule witnesses, David Doughten, Daniel Doughten, and Matthew Dombrowski. Doc. 1 at 20. Respondents argue that the current claim is unexhausted and procedurally barred because Petitioner did not raise this claim during his direct appeal in state court. Resp. at 22-23. The Court agrees. Upon review of the record, the Court finds that Petitioner failed to present this claim in state court. As such, this claim is unexhausted and procedurally defaulted. Petitioner has failed to show either cause and prejudice from

the default, or that a fundamental miscarriage of justice will result if the claim is not addressed on the merits. Therefore, he is not entitled to federal review of this claim.

Further, to the extent Petitioner urges that the state court erred under Florida law when it allowed the state to present these witnesses, this assertion is not cognizable on federal habeas review. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman, 22 F.3d at 1555; see also Baxter, 45 F.3d at 1509 (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins, 737 F.2d at 1543 (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections). Thus, Petitioner's allegations that the trial court violated state law are not proper for the Court's consideration.

Nevertheless, even if this claim was cognizable and otherwise proper for federal habeas review, it is without merit. Similar fact evidence, also known as "collateral crime evidence" or Williams rule evidence, is evidence that points to the commission of a separate crime, and is admissible if relevant for any purpose except demonstration of bad character or propensity. Williams v. State, 110 So. 2d 654 (Fla. 1959). Pursuant to section 90.404, Florida statutes, "evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." See also Fed. R. Evid. 414. In assessing whether such evidence is relevant, the trial court should evaluate: "(1) the similarity

35

of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances." <u>McLean v. State</u>, 934 So. 2d 1248, 1262 (Fla. 2006).

Prior to trial, the state filed a notice, pursuant to sections 90.402 and 90.404(2)(b), that it intended to introduce the testimony of three witnesses who would testify that Petitioner also sexually abused them. Resp. Ex. A at 32. In granting the state's request to present this evidence, the trial court found the following:

> Florida Statute Section 90.[404](2)(b)[19] says that in a criminal case in which the defendant is charged with [a] crime involving child molestation, the evidence of the defendant's commission of other crimes, wrongs, or acts of the child molestation is admissible and may be considered for its bearing on any matter to which it is relevant. And in the case of <u>Florida v. McClain</u> which is a Florida Supreme Court case found at 434 So. 2d 1248 - - that is a 2006 case - - held that . . . section 90.404(2)(b) does not violate due process when applied in a case in which the identity of the defendant is not an issue - - and this case identity is not an issue - - and the provision is used to admit evidence to corroborate the victim's testimony.

> In its ruling, the Supreme Court expounded upon this holding by making it clear, in order to be admissible, Section 90.[404](2)(b) must be relevant and remain subject to weighing under the Florida Statute 90.403.

> In this case here, these <u>Williams</u> rule witnesses, . . . [are] sufficiently similar to the charged crime that he's to be

---

[19] The trial transcript contains a typographical error in which is erroneously cites to section 90.202, Florida Statutes, which pertains to the trial court's ability to take judicial notice of evidence. Resp. Ex. B at 7.

tried on today. In each case the victims were between the ages of 11 and 14. Each of the victims were male. Each of the victims was known to the defendant. Much of the abuse took place at defendant's residence. The abuse of Dombrowski and Daniel Doughten took place within five years of the crimes charged, and the evidence included acts of sexual abuse against each 90.[404](2)(b) [witness] is identical to those conducted by the defendant against the child victim: oral sex and fondling.

It's the court's ruling that it's admissible.

Resp. Ex. B at 7-9. In this action, the Court has reviewed the testimony of these three <u>Williams</u> rule witnesses and finds that such testimony was relevant and admissible. Resp. Ex. C at 319-59. All three witnesses testified that Petitioner sexually molested them by placing his hand down their pants and touching their genitals. <u>Id.</u> at 34, 338, 349-50. Two of the witnesses testified that Petitioner performed oral sex on them (Resp. Ex. C at 322, 336), and one of the witnesses testified that he kept the abuse secret for many years (Resp. Ex. C at 351). These similarities supported the victim's testimony and were relevant. Thus, the trial court did not err in finding such evidence admissible.

Moreover, prior to their testimony, the trial court instructed the jury that the <u>Williams</u> rule witnesses were being presented for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, the absence of mistake or accident on the part of defense or corroborate the victim's testimony. Resp. Ex. C at 317, 348. The trial court further clarified that Petitioner was not on trial for any crime not included in the Information. <u>Id.</u> As such, the jury knew the limited

purpose of the testimony, and thus, it did not become a feature at trial. This Ground is denied.

**B. Supplemental Petition**

***First Supplemental Claim***

In his First Supplemental Claim, which Petitioner titles as "Ground Fifteen," Petitioner alleges that manifest injustice occurred when (1) the state failed to disclose videotape evidence that was exculpatory, amounting to a <u>Brady</u> violation; (2) the state suppressed medical examination results that were favorable to Petitioner, amounting to a <u>Brady</u> violation; and (3) the state allowed Aislinn Palmer to present false testimony that she did not refer the victim to a doctor, amounting to a <u>Giglio</u>[20] violation. Doc. 38 at 3-4. Respondents assert that these claims are untimely because they fail to relate back to any claim that was timely asserted in the Petition. Supp. Resp. at 6.

Federal habeas petitions are civil in nature and are governed by the Federal Rules of Civil Procedure. <u>See</u> Habeas Corpus Rule 11; Fed. R. Civ. P. 81(a)(4). As such, a habeas petition may be amended as provided in the rules of procedure applicable to civil actions. <u>See</u> 28 U.S.C. § 2242. Under the Federal Rules of Civil Procedure, pleading amendments relate back to the date of the original pleading when "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" Fed. R. Civ.

---

[20] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

P. 15(c)(2). An amendment to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005). A new claim, however, does not meet the standard and, thus, does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." <u>Id.</u> at 650. The terms "conduct, transaction, and occurrence" are to be narrowly construed and are not synonymous with "trial, conviction or sentence." <u>Id.</u> at 664.

Petitioner argues that his supplemental manifest injustice/<u>Brady</u> allegation regarding the videotape evidence relates back to the ineffective assistance of trial counsel claim for failure to request a <u>Richardson</u> hearing regarding the state's destruction of the videotaped interview between the victim and Palmer, which is alleged in Claim Six (Doc. 1 at 13-14) of his Petition.[21] <u>See</u> Doc. 44 at 1. He further argues that his supplemental manifest injustice/<u>Brady</u> allegation regarding withheld medical reports relates back to his ineffective assistance of trial counsel claim for failure to object to the state withholding such medical report, which is alleged in Claim Five (Doc. 1 at 12-13) of the Petition. <u>See</u> Doc. 44. However, Petitioner does admit that his supplemental <u>Giglio</u> claim does not relate back to his Petition as it is now being raised for the first time. Doc. 44 at 2.

---

[21] Petitioner erroneously references this ineffective assistance of trial counsel claim as being "Ground Twelve" of the Petition. Doc. 44 at 1.

The Court finds that these claims fail to relate back to any claim raised in the Petition. Indeed, Claim Five and Claim Six of the Petition are premised upon allegations of ineffective assistance of trial counsel regarding the videotaped interview and medical report. Here, however, Petitioner for the first time challenges the trial court's conduct regarding this evidence. Thus, the Court finds that the supplemental manifest injustice/<u>Brady</u> claims "differ in both time and type from those the original pleading set forth." See <u>Mayle</u>, 125 S. Ct. at 650. The Court further recognizes Petitioner's acknowledgment that his supplemental <u>Giglio</u> claim does not relate back to his Petition. Doc. 44 at 2. Thus, the allegations in the Petition did not reasonably put Respondents on notice that Petitioner was challenging the trial court's conduct in this manner. As such, the Court finds that Petitioner's First Supplemental Claim is untimely. Petitioner does not argue that he is entitled equitable tolling, and he fails to allege any factual allegations supporting due diligence or extraordinary circumstances. See <u>Lawrence v. Florida</u>, 549 U.S. 327, 336 (2007); see <u>Cadet v. Fla. Dep't of Corr.</u>, 853 F.3d 1216, 1221 (11th Cir. 2017).

Further, to the extent Petitioner asserts a claim of actual innocence as a gateway to avoid enforcement of the one-year limitations period, the Court finds that these claims do not satisfy the actual innocence standard. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, a petitioner must "present new

reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." <u>Rozzelle v. Sec'y, Fla. Dep't of Corr.</u>, 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); <u>see</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (finding that to make a showing of actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable doubt").

Petitioner raised these claims in a successive Rule 3.850 motion in state court. Supp. Resp. Ex. A. In summarily denying the claims, the trial court found the claims to be successive and untimely raised under Rule 3.850. Supp. Resp. Ex. B. Specifically, the trial court found that these claims involved underlying issues that were previously considered and rejected either at trial in a motion to dismiss or in Petitioner's initial Rule 3.850 motion. <u>Id.</u> at 3. Likewise, in this action, the Court finds that Petitioner has not produced exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available at the time of his trial. Indeed, he has failed to point to any evidence to demonstrate that it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt in light of this evidence. This is not an "extraordinary" case under the <u>Schlup</u> standard. As such, Petitioner has failed to demonstrate actual innocence and this claim is without merit.

### Second Supplemental Claim

Petitioner alleges that he is in receipt of newly discovered evidence that demonstrates that he is actually innocent. Doc. 38 at 5-7. Specifically, Petitioner avers

41

that he recently obtained a transcript of the videotaped interview involving the victim and Aislinn Palmer, in which the victim denies that Petitioner sexually abused him. Id. He further claims that the state's suppression of this transcript amounts to newly discovered evidence of a Brady violation. Id.

Respondents again argue that these allegations are untimely because they do not relate back to the Petition. Supp. Resp. at 11-12. The Court agrees with Respondents' argument and finds that this Second Supplemental Claim fails to relate back to the Petition, and is thus, untimely. Petitioner, however, attempts to overcome any time bar by raising allegations of actual innocence. Doc. 38 at 7.

A review of the record shows that Petitioner raised these allegations of newly discovered evidence in his second successive Rule 3.850 motion in state court and provided a copy of the purported transcript. Supp. Resp. Ex. F at 647-71. In summarily denying Petitioner's claim regarding the transcript, the trial court found the following:

> Here, assuming the authenticity of the transcript, the information found in the transcript is cumulative, irrelevant, hearsay, or improper impeachment evidence. To the extent there is any relevant, admissible information from the transcript, that information was disclosed to Defendant and during the trial. In particular, C.A. and Aislinn Palmer testified that C.A. had previously denied ever being touched or molested by Defendant. Further, Aislinn Palmer testified that C.A. understood the difference between the truth and a lie when he first denied any offensive [contact] with Defendant.
>
> C.A. also testified that he had difficult relationships with his step-father and mother. C.A. admitted that he would seek "refuge" at Defendant's house to "hide out" from his mom because she was upset. In addition, C.A.'s mother

testified that C.A. did not get along with his step-father and that she would spank C.A. with a belt.

Further, the fact that C.A. may have spent the night at Defendant's home after C.A. turned twelve is irrelevant and not exculpatory evidence. The transcript reveals and C.A. testified that he frequently spent time during the day at Defendant's home prior to C.A.'s twelfth birthday. C.A. testified that Defendant "did stuff" to him while C.A. was at Defendant's home during the day. C.A. expressly testified that before and after he turned twelve years old (1) Defendant had touched his penis, (2) Defendant had performed "oral sex" on him, and (3) Defendant attempted to put Defendant's penis in his butt.

In view of the information from the transcript and the evidence adduced at trial, the Court finds that the newly discovered evidence is not of such a nature that it would probably produce an acquittal on retrial. Therefore, Defendant is not entitled to relief on this claim.

Supp. Resp. Ex. F at 676-77. As to Petitioner newly discovered <u>Brady</u> claim, the trial court found in relevant part:

Here, Defendant had access to and was aware of the relevant and any material information provided in the transcript from C.A. and Aislinn Palmer. In particular, Defendant was already aware that C.A. had previously denied any wrong-doing by Defendant and C.A.'s difficult relationships with his mother and step-father. C.A. and Aislinn Palmer readily admitted to these facts during trial. Therefore, the Court finds that Defendant has failed to demonstrate a <u>Brady</u> violation.

Supp. Resp. Ex. F at 678-79. The First DCA per curiam affirmed the trial court denial without issuing a written opinion. Supp. Resp. Ex. J.

As the trial court explained, Petitioner has not offered any new reliable evidence that was not available at the time of his trial. He has not produced exculpatory

evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available at the time of his trial. Indeed, he has failed to point to any evidence to demonstrate that it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt in light of this allegedly new evidence. This is not an "extraordinary" case under the Schlup standard. As such, Petitioner has failed to demonstrate actual innocence and this claim is without merit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) and Supplemental Petition (Doc. 38) are **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals the denial of the Petition and Supplemental Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[22]

---

[22] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of March, 2019.


TIMOTHY J. CORRIGAN
United States District Judge


Jax-7

C:     Gary E. Doughten, #988259
       Charles R. McCoy, Esquire

---

'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.